UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                   :

SINAKA GARCIA,
                                                   :

                    Petitioner,                  05 Civ. 7055 (LAP) (DF)
                                                   :

       -against-                         **REPORT AND**
                                                   :           **RECOMMENDATION**
WARDEN CRAIG APKER,
                                                   :

                    Respondent.
---------------------------------------------------------------X

**TO THE HONORABLE LORETTA A. PRESKA, U.S.D.J.:**

# INTRODUCTION

By way of his Petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, *pro se* petitioner Sinaka Garcia ("Petitioner") seeks an order compelling the Federal Bureau of Prisons (the "BOP") to grant him prior custody credit pursuant to 18 U.S.C. § 3583(b). (*See* Petition for Writ of Habeas Corpus ("Petition") (Dkt 1).) For the reasons set forth below, I recommend that the Petition be dismissed.

# BACKGROUND

### A.    Petitioner's Pennsylvania State Charges

On June 12, 1997, Petitioner was arrested in Pennsylvania on a state drug charge. (*See* Declaration of Carol M. Hawthorne, sworn to on Dec. 7, 2005 ("Hawthorne Decl.") (Dkt. 7), at Ex. A.) On December 8, 1997, in the Court of Common Pleas, Northampton County, Pennsylvania, he pleaded guilty to Conspiracy with Intent To Deliver Cocaine, and, on the same date, he was sentenced to a term of nine to 23 months of imprisonment on that conviction. (*See id.* ¶ 5 and Ex. A.) It appears that, following his arrest on the drug charge, Petitioner was

detained at the Northampton County Prison in Pennsylvania, and that he remained incarcerated there until December 30, 1997, when he escaped from that facility. (*See id.*, Ex. A at 5; *see also id.* at Ex. G.)

Petitioner was subsequently charged with Escape under Pennsylvania law, and the Northampton County Court of Common Pleas issued a warrant for his arrest on January 9, 1998. (*See* Hawthorne Decl. Ex. B.) As reflected on the warrant, Petitioner was believed to be residing in Brooklyn, New York at that time. (*See id.*)

### B. Petitioner's Arrest in New York

On March 15, 2002, at the Brooklyn address listed on the Pennsylvania warrant, Kings County law enforcement officers arrested Petitioner on the Pennsylvania Escape charge. (*See* Hawthorne Decl. ¶ 7 and Ex. A at 3.) Upon entering the apartment, however, the police officers not only found Petitioner, who was apparently sleeping in a bedroom, but also observed a gun case on the ground near where Petitioner was sleeping. (*See id.*, Ex. A at 3.) The officers inspected the case and discovered that it contained a loaded, nine-millimeter, semi-automatic pistol; the officers also found an additional 143 rounds of ammunition on a dresser in the bedroom. (*See id.*) Upon his arrest, Petitioner admitted that he owned the gun. (*See id.*; *see also* Petition, at 2.)

Following his arrest, Petitioner was detained (presumably in a New York state facility in Brooklyn[1]) pursuant to the Pennsylvania warrant. (*See* Hawthorne Decl., Ex. F at 5.) He was

---

[1] The record does not reflect, and this Court has not been able to determine, the identity of this facility.

also charged by the Kings County District Attorney's Office with Criminal Possession of a Weapon. (*See id.* ¶ 8; Ex. A at 6; Ex. F at 5.)

    **C.**    <u>**The Federal Charge**</u>

On April 3, 2002, federal law enforcement officials took custody of Petitioner, charging him under federal law as a felon in possession of a firearm. (*See* Hawthorne Decl. ¶ 8 and Ex. A at 6.) In conjunction with this exercise of federal authority, the Kings County Criminal Court dismissed the New York state weapons possession charge, and Petitioner was transferred to the Metropolitan Detention Center (the "MDC") in Brooklyn, New York. (*See id.* at ¶ 9 and Exs. A and D.)

On June 14, 2002, in the United States District Court for the Eastern District of New York, Petitioner pleaded guilty to Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). (*See* Hawthorne Decl. ¶ 10 and Ex. A at 3.) On December 18, 2002, the Honorable Charles P. Sifton, U.S.D.J., sentenced Petitioner to 51 months imprisonment on the federal conviction, and specified that the federal sentence was to run consecutively to the sentence Petitioner was "presently serving," referring to Petitioner's sentence for his Pennsylvania drug conviction. (*See id.*, Ex. E at 2.)

    **D.**    <u>**Petitioner's Plea and Sentencing on the Escape Charge**</u>

On December 5, 2003, almost one year after Petitioner's federal sentence was imposed, Petitioner was brought to Pennsylvania state court, where he pleaded guilty to Escape. (*See* Hawthorne Decl. ¶ 14 and Ex. F.) During this proceeding, in which the Pennsylvania state court went on to sentence Petitioner, the district attorney stated the following on the record:

> . . . I have received confirmation from the federal authorities that
> [Petitioner] . . . has been sentenced to a 51 month federal sentence

> which he is waiting to serve. He may have some issues in the
> federal courts, but that has nothing to do with our case.
>
> When [Petitioner] escaped . . . [t]he balance owed on [his sentence
> for the drug conviction] sentence was 16 months and 13 days. He
> was incarcerated in Brooklyn on March 15th, 2002, on our detainer
> initially[,] and the time for [the drug conviction] sentence . . .
> would [have] run on July 28th, 2003. So the record should be clear
> that that period of time would be credited to maxing out on [the
> drug conviction] sentence, which is what would happen, given the
> fact that he walked away[;] under those circumstances he would
> not be paroled.

(*See* Hawthorne Decl., Ex. F at 5-6.) In other words, in the prosecutor's view, the first 16 months and 13 days that Petitioner had spent in state and federal custody in New York (*i.e.,* from March 15, 2002 to July 28, 2003) would be credited to the remaining, maximum Pennsylvania state sentence on his drug charge. According to the prosecutor, such credit would result in Petitioner having completed the sentence on the drug charge as of July 28, 2003. (*See id.*)

Further, the Pennsylvania district attorney informed the court that, subject to the court's approval, the parties had agreed that any sentence imposed on the Escape conviction should be "concurrent with that maxing out on the drug case," so that Petitioner's sentence for the Escape charge could similarly be deemed completed as of July 28, 2003. (*See id.*) The district attorney recommended, and the court imposed, a sentence of three to six months imprisonment on the Escape conviction. (*See id.* at 5-8.) The court further ordered, in accordance with the district attorney's recommendation, that Petitioner's sentence on the Escape conviction would run concurrently with the remainder of the maximum sentence for Petitioner's drug conspiracy conviction, so that each of Petitioner's sentences could be deemed to have expired on July 28, 2003. (*See id.* at 6-8.)

In light of the fact that Petitioner had remained incarcerated for more than four months after the "max date" of his concurrent Pennsylvania sentences, the district attorney and the Pennsylvania court surmised that Petitioner would receive credit from July 28, 2003 "onward" towards his federal sentence of 51 months, although the district attorney noted that the state had no control over how the federal authorities would calculate Petitioner's sentence. (*See* Hawthorne Decl., Ex. F at 5-6.) Further, Petitioner agreed to waive his 30-day right to appeal the sentence on his Escape conviction, so that he "would be available to be transferred to the federal system before 30 days." (*See id.* at 7-8.) Accordingly, because it appeared to the Pennsylvania court that Petitioner had already completed serving his sentence on each of the state court convictions on July 28, 2003, the court ruled that Petitioner was "to be released directly to the federal authorities." (*See id.*)

Subsequently, the Northampton County Department of Corrections ("NCDOC") calculated Petitioner's sentence pursuant to the Pennsylvania court's ruling. (*See* Hawthorne Decl. at Ex. G.) The NCDOC credited Petitioner not only for time served on his drug conviction prior to his escape, *i.e.,* the 200 days from June 13, 1997 (the day following his initial arrest) to December 30, 1997 (the day he escaped from prison) during which Petitioner was incarcerated in Pennsylvania, but also for the first 16 months and 13 days (from March 15, 2002 to July 28, 2003) that he was incarcerated in New York, initially by state, and then by federal, authorities. (*See* Hawthorne Decl. at Ex. G.) The NCDOC further determined that the effective commencement date for Petitioner's sentence on the Escape conviction was January 28, 2003. (*See id.*) Thus, applying the credit Petitioner received for time served, the NCDOC determined

that, as of July 28, 2003, Petitioner had completed serving the maximum sentence on each of his Pennsylvania state court convictions, as anticipated by the court. (*See id.*)

### E. Petitioner's Release To Federal Custody

On December 5, 2003, immediately following the Pennsylvania sentencing proceedings, Petitioner was released to federal authorities to complete his federal sentence. (*See* Hawthorne Decl. at Ex. G.) Beginning its computation on July 28, 2003 (the expiration date of Petitioner's sentence on each of his state court convictions), the BOP calculated Petitioner's projected release date on his federal sentence as April 10, 2007. (*See id.* at Ex. G.)

Although it appears that Petitioner was subsequently incarcerated in various federal facilities, the names and locations of which are unclear from the record (*see id.* at Ex. D), Petitioner is currently incarcerated in the Federal Correctional Institution in Otisville, New York ("Otisville"). (*See id.*; *see also* Petition at 6.)

### F. Habeas Petition

On July 20, 2005, Petitioner filed the Petition,[2] in which he appears to argue that, in calculating his federal sentence, the BOP failed to grant him sufficient prior custody credit. (*See* Petition at 3-5.)[3] On September 26, 2005, this matter was referred to me by the Honorable

---

[2] Although the Court's docket reflects a filing date of August 9, 2005 for the Petition (*see* Dkt. 1), a *pro se* prisoner's papers are deemed filed when they are handed over to prison officials for forwarding to the Court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Here, the Court will deem the Petition to have been filed on July 20, 2005, the postmark date on the envelope in which the undated Petition was mailed to the Court. *See Hemphill v. Senkowski*, No. 02 Civ. 7093 (DC), 2004 U.S. Dist. LEXIS 7617, at *19-20 (S.D.N.Y. May 3, 2004).

[3] Although Petitioner asserts in the Petition that he "filed administrative remedies, and to no avail Petitioner ha[s] exhausted such remedies" (*see* Petition at 4), Respondent does not address this, and neither Petitioner nor Respondent has submitted any evidence relevant to the question of whether Petitioner actually exhausted his administrative remedies. In any event,

Loretta A. Preska, U.S.D.J., for report and recommendation. On December 9, 2005, Respondent opposed the Petition, by filing the Hawthorne Declaration and a "Return" signed by United States Attorney Michael J. Garcia (*see* Dkt. 6), together with an opposition brief, in which Respondent argues that Petitioner is not entitled to prior custody credit under 18 U.S.C. § 3585(b). (*See* Respondent's Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus ("Resp. Mem.") (Dkt. 5).) On December 30, 2005, Petitioner filed his Reply, entitled "Motion in Traverse to Respondent's Answer to Petitioner's Habeas Corpus Petition." (*See* Dkt. 8.)[4]

---

because "the exhaustion requirement for § 2241 petitions is prudential, not statutory, unlike habeas corpus petitions filed pursuant to 28 U.S.C. § 2254," a petitioner's "failure to exhaust may be excused at the court's discretion" in a Section 2241 action. *Zucker v. Menifee*, No. 03 Civ. 10077 (RJH), 2004 U.S. Dist. LEXIS 724, at *12 (S.D.N.Y. Jan. 21, 2004). Moreover, the Court need not even reach the issue of exhaustion here because, for the reasons stated below, Petitioner's claim fails on the merits. *See, e.g., Otero v. Menifee*, No. 04 Civ. 8671 (JSR) (FM), 2006 U.S. Dist. LEXIS 3519, at *9 n.3 (S.D.N.Y. Jan. 23, 2006) (Report and Recommendation) (although "a petitioner seeking a writ of habeas corpus under Section 2241 must generally first exhaust his administrative remedies," that requirement "is excused . . . when the effort would be futile"), *adopted* Mar. 10, 2006.

[4] As with the Petition, the Court deems Petitioner's Reply to have been filed as of the date it was handed over to prison officials for forwarding to the Court. *See Houston*, 487 U.S. at 270. Unlike the Petition, the Reply was certified and dated by Petitioner; thus, the Court will deem the Reply to have been filed on that date, which is December 30, 2005. *See Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 165 (S.D.N.Y. 2000).

**DISCUSSION**

Under 18 U.S.C. § 3585(b), the BOP may award credit for prior time spent by the defendant in custody, in order to reduce the defendant's term of imprisonment.[5] Specifically, Section 3585(b) provides that:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

Although it is not entirely clear from his Petition or Reply, Petitioner appears to request prior custody credit under Section 3585(b) towards his 51-month federal sentence for the period from April 3, 2002 (when federal law enforcement first took custody of Petitioner on the felon-in-possession charge) to July 28, 2003, when Petitioner "was transferred to Federal Custody once again." (*See* Petition at 2-3.) In support of his claim that he is entitled to prior custody credit for this time period, and that such credit should be awarded towards the sentence on his federal conviction (*see* Reply at 3), Petitioner argues that "[a]t no time prior to [his]

---

[5] It is well settled that "[t]he Bureau of Prisons, and not the courts, determines when a defendant's sentence starts and whether the defendant should receive credit for any prior time spent in custody." *United States v. Montez-Gaviria*, 163 F.3d 697, 700-01 (2d Cir. 1998); *see also United States v. Wilson*, 503 U.S. 329, 334 (1992) (holding that Section 3585(b) "does not authorize a district court to compute the credit at sentencing").

8

appearance in Pennsylvania's Court system for the escape charges, was [he] under Pennsylvania's jurisdiction"; rather, in Petitioner's view, he "was being held in Federal Custody for charges that were dismissed by the State of New York." (Petition at 5.) As a result, Petitioner contends that all time spent in custody after he was charged with possessing a firearm in violation of 18 U.S.C. § 922(g)(1) must be credited towards his federal sentence on that charge. (*See id.*) ("[A]ny time served in prison is awarded towards the sentence imposed by the Court which had jurisdiction over the prisoner").

Respondent, on the other hand, argues that Pennsylvania obtained primary jurisdiction over Petitioner on the day he was arrested, pursuant to the Pennsylvania warrant on the Escape charge, and that Pennsylvania did not relinquish its jurisdiction over Petitioner until "his state sentence for drug conspiracy expired on July 28, 2003." (Resp. Mem. at 5.) Further, Respondent argues that because "the months at issue have already been applied to [Petitioner's] Pennsylvania sentences, [he] may not obtain prior custody credit pursuant to 18 U.S.C. § 3585(b). (*Id.* at 6.)

Respondent is correct with respect to both of its arguments. First, to the extent that Petitioner is contending that he was under *federal* jurisdiction during the period at issue (from April 3, 2002 to July 28, 2003), and that this period therefore should have been credited towards his federal sentence, rather than his remaining Pennsylvania state sentence, such a contention must fail. As Respondent notes (*see* Resp. Mem. at 4-5), the State of Pennsylvania obtained primary jurisdiction over Petitioner on March 15, 2002, when he was arrested pursuant to a Pennsylvania warrant for the crime of Escape, and – despite Petitioner's arrest on the federal weapons possession charge on April 3, 2002 – Pennsylvania did not relinquish jurisdiction over

9

him until his state sentences expired on July 28, 2003. *See United States v. Smith*, 812 F. Supp. 368, 371 n.2 (E.D.N.Y. 1993) ("As a general rule, the first sovereign to arrest an offender has priority of jurisdiction over him for trial, sentencing, and incarceration . . . . This jurisdiction continues until the first sovereign relinquishes its priority by, for example, bail release, dismissal of the state charges, parole release, or expiration of the sentence.") As a result, Petitioner's federal sentence on the weapons possession conviction did not commence until July 28, 2003, as correctly calculated by the BOP (*see* Hawthorne Decl. at Ex. D),[6] and any credit for time served by the Petitioner prior to that date was properly applied towards his Pennsylvania sentences on the drug and Escape convictions.

Second, by its explicit terms, Section 3585(b) only allows a prisoner prior custody credit if the time served "has not been credited against another sentence." *See* 18 U.S.C. § 3585(b). The phrase "another sentence" contemplates sentences imposed pursuant to either state or federal convictions. *See, e.g., Tisdale v. Menifee*, 166 F.Supp. 2d 789, 792 (S.D.N.Y. 2001) (denying habeas petition in part because Section 3585(b) precluded petitioner "from receiving 'double credit' for [time served] on both his state and federal sentences"). Here, the record clearly demonstrates that all of the time that Petitioner served in custody from March 15, 2002 to July 28, 2003, including the time he served in federal custody, was credited to the sentence that remained on his Pennsylvania drug conviction, as well as to his concurrent sentence on the Escape charge. (*See, e.g.,* Hawthorne Decl. at Ex. G.) Indeed, Petitioner does not dispute this,

---

[6] By determining that Petitioner's federal sentence retroactively commenced on July 28, 2003, the BOP automatically credited Petitioner's federal sentence with the time he spent in custody from July 28, 2003 to December 5, 2003, the date of Petitioner's plea and sentencing proceedings in Pennsylvania state court.

10

and even acknowledges that he "was informed" by the staff at Otisville that any time he had served in custody, prior to arriving at Otisville, "was awarded to the term of imprisonment imposed by the State of Pennsylvania." (*See* Petition at 3.) Petitioner's claim, therefore, must fail under Section 3585(b) for the simple reason that the NCDOC already credited towards Petitioner's Pennsylvania state sentences the same period of time that Petitioner now seeks to have credited towards his federal sentence. *See Dent v. Zenk*, 408 F. Supp. 2d 103, 103 (E.D.N.Y. 2005) ("[E]ven assuming that petitioner should be deemed to have been in federal custody after the detainer was filed – a matter this court need not address – petitioner's claim must be rejected because petitioner has already received state credit for the time served after the detainer was filed").

Accordingly, I recommend that the Petitioner's claim for prior custody credit be denied.

## CONCLUSION

For the foregoing reasons, I recommend that the Petition be dismissed. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Loretta A. Preska, United States Courthouse, 500 Pearl Street, Room 1320, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 40 Centre Street, Room 631, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Preska. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See*

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, York
March 16, 2006

Respectfully submitted,

*/s/ Debra Freeman*

Debra Freeman
United States Magistrate Judge

Copies to:

Hon. Loretta A. Preska, U.S.D.J.

Sinaka Garcia, *pro se*
#67715-053
F.C.I. Otisville
P.O. Box 1000
Otisville, NY 10963

Kristin L. Vassallo, Esq.
Assistant United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007